IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DONNELL ELDRIDGE, | § | |
| TDCJ-CID No. 1181898, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:23-CV-00175-Z-BR |
| | § | |
| BOBBY LUMPKIN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO DISMISS COMPLAINT**

Before the Court is the Complaint (ECF 3) filed by Plaintiff Donnell Eldridge ("Eldridge") against Defendants Bobby Lumpkin, N. Martin and H.W. Pederson for conditions arising during Eldridge's imprisonment at the Clements Unit of the Texas Department of Criminal Justice. Eldridge filed this lawsuit *pro se* and was granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Eldridge's Complaint be DISMISSED pursuant to 28 U.S.C. §§ 1915 and 1915A.

**I. STANDARD OF REVIEW**

A court must *sua sponte* dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable

1

basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Legal Analysis

### A.    Factual Background.[1]

For four days in February 2023, Eldridge, age 56, was housed with a cellmate who was 34 years younger and in much better physical condition. (ECF 3 at 8, 15; ECF 8 at 2). During that time, the cellmate "constantly" demanded sexual favors from Eldridge to such an extent that Eldridge couldn't eat or sleep due to his emotional distress and fear that he would be assaulted.

---

[1]These background facts are taken from Plaintiff's Complaint and are assumed to be true for the purpose of evaluating the merits of Plaintiff's causes of action.

(ECF 8 at 2, 4). He admits that he was never physically injured by his cellmate, however. (ECF 8 at 3). Eldridge claims that Defendants failed to protect him and failed to address his grievance properly. (ECF 3 at 10). He alleges violations of the Eighth Amendment and seeks monetary damages, as well as declaratory and injunctive relief.

**B.      Plaintiff's Claims against Lumpkin and Martin.**

Eldridge alleges that Defendants Bobby Lumpkin and N. Martin violated his Eighth Amendment rights by allowing their subordinates to house him with a significantly younger cellmate who demanded sexual favors from him. (ECF 8 at 2). It is well established that supervisory officials are not liable for the acts of their subordinates unless they: (1) affirmatively participated in an act that caused a constitutional deprivation, or (2) implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (*citing Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A prisoner must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as prison supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Id*. at 304 (quotations omitted).

In order to establish a claim for a deficient policy that caused the violation of a constitutional right under § 1983, a plaintiff must identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of his constitutional rights. *Monell v. Dep't of Soc. Serv.*, 435 U.S. 658, 694-95 (1978). Eldridge has not

alleged facts that satisfy this standard. Eldridge has not complained that any policy created by these supervisory officials was the cause of the alleged violation of his constitutional rights. To the contrary, Eldridge appears to claim that the policies in place were not followed as to housing inmates of disparate ages in the same cell. Eldridge has failed to establish that these Defendants were personally involved in a violation of his rights. Additionally, Eldridge has failed to show that these Defendants were liable in their supervisory roles for a constitutionally deficient policy that created a violation of his constitutional rights.

Eldridge's questionnaire responses also appear to allege a failure to train cause of action against Lumpkin, in that he alleges that Lumpkin "is responsible for implementing policy and making sure it is adhered to." (ECF 8 at 1). The Fifth Circuit has held that, in a case involving failure to train or supervise, the plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008). Deliberate indifference in such a situation requires "a conscious choice to endanger constitutional rights" and the proof of deliberate indifference generally requires more than a single instance of the lack of training or supervision causing a violation of constitutional rights. *Id*.

In addition, the Fifth Circuit has held that a claim of failure to train presupposes an underlying constitutional violation. *See Perryman v. Bloomfield*, 69 F. App'x 659 (5th Cir. 2003) (citing *City of Canton*, 489 U.S. at 385; *accord, Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997). In this case, however, as in *Perryman* and *Becerra*, there is no underlying constitutional violation, as shown below. In the absence of an underlying constitutional violation, Eldridge cannot maintain a cause of action for inadequate training or supervision.

4

**C.    Plaintiff's Claims Against Pederson.**

Eldridge alleges that Defendant H.W. Pederson failed to investigate his grievance properly, and never took his claim seriously. He further takes issue with Pederson's determination that Eldridge and his cellmate were housed properly, although their age difference violates prison policy and procedure, according to Eldridge. (ECF 8 at 2-3). In short, Eldridge's allegations against Pederson amount to nothing more than a claim that Pederson did not resolve Eldridge's grievance to his satisfaction. "Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction, and an alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless." *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (internal quotations omitted). The Fifth Circuit has stated that an alleged violation of a prisoner's due process rights resulting from prison grievance procedures is a "legally nonexistent interest." *Geiger*, 404 F.3d at 374. Further, even an intentional cover-up does not amount to a constitutional violation. *See Cunningham v. de la Vaga*, 131 F.3d 141 (5th Cir. 1997) (per curiam) ("Regarding Cunningham's contention that the defendants conspired to cover up the attack …, Cunningham has not shown that the defendants violated any constitutionally protected right."). Accordingly, Eldridge's cause of action against Peterson regarding Pederson's improper grievance investigation fails to state a claim. *See Hill*, 718 F. App'x at 250.

**D.    Violation of Prison Policy.**

Similarly, an assertion that prison officials failed to follow prison rules or policies does not state a constitutional claim. *McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012), *citing Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989); *see also Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam). TDCJ's policies, internal rules, and regulations, standing alone,

do not create federally protected rights. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995); *Jackson*, 864 F.2d at 1251-52 ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because constitutional minima may nevertheless have been met." (internal quotation omitted)). The allegation that Defendants failed to follow a prison rule does not state a constitutional law violation.

### E.    Violation of Eighth Amendment.

Eldridge's assertion that he was housed for four days with a significantly younger cellmate, standing alone, does not state a claim for an Eighth Amendment violation. He apparently alleges that Defendants knew and disregarded the dangers of housing a younger offender with him. "It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). This duty, which is grounded in the Eighth Amendment's prohibition against cruel and unusual punishment, is nevertheless a limited one. *Farmer*, 511 U.S. at 832-34. To prevail on a failure to protect claim, a prisoner must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Id*. The mere fact that there was a 34-year age gap between Eldridge and his 22-year-old cellmate is not sufficient to establish that Eldridge was incarcerated under conditions posing a substantial risk of serious harm.

Nor has Eldridge alleged sufficient facts to show that Defendants were deliberately indifferent to his safety. A prison official is deliberately indifferent to a prisoner's safety when the official is aware of a substantial risk of harm to the prisoner but disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). To act with deliberate indifference, a prison official must be "subjectively aware"

of the risk; that is, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. However, even if a prison official was subjectively aware of the risk, he may be found free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844. Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient. *Id*. at 837. The deliberate indifference standard is an extremely high standard to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Assuming *arguendo* that the age gap between Eldridge and his cellmate, standing alone, created a risk of substantial harm to Eldridge, Eldridge has not alleged any facts to show that Defendants were deliberately indifferent to his safety when they placed a 22-year-old in his cell. Therefore, his Eighth Amendment violation claim fails.

**F.    Violation of the PREA.**

Eldridge alleges that the sexual harassment perpetrated by his cellmate constitutes a violation of the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309. Even if this allegation were true, however, the PREA does not create a private right of action for prisoners. *Dudley v. United States*, No. 4:19-CV-317-O, 2020 WL 532338, at *7 (N.D. Tex. Feb. 3, 2020). A claim under the Act is properly dismissed as frivolous. *Krieg v. Steele*, 599 F. App'x 231, 232–33 (5th Cir. 2015).

**G.    Plaintiff's Damages Claim.**

Even if Eldridge had alleged a constitutional violation, he is not entitled to the relief he seeks. Section 1997e(e) of the PRLA provides that a plaintiff asserting recovery for constitutional violations is not entitled to recover compensatory damages "for mental or emotional injuries unless there is a prior showing of physical injury..." 42 U.S.C. § 1997e(e). Eldridge admits in his

questionnaire responses that he was not physically injured by his cellmate. (ECF 8 at 3). Therefore, the PLRA bars his claim for $50,000 in compensatory damages from each Defendant.

The PLRA does not require a prior physical injury to support claims for declaratory or injunctive relief; however, Eldridge is not entitled to recover on these claims. First, he seeks a declaration that Defendants' acts and omissions "violated his rights under the Constitution and the laws of the United States." (ECF 3 at 11). For the reasons stated above, the acts and omissions of which he complains did not violate his constitutional or statutory rights and, therefore, he is not entitled to such declaratory relief.

Second, Eldridge seeks a preliminary and a permanent injunction ordering Defendants to "cease their acts of torture towards Plaintiff". (*Id*.) However, because he admits that his cellmate was transferred after four days, his request for injunctive relief is moot. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that even if an inmate was able to establish a Constitutional violation, his transfer to another prison rendered moot his claim for declaratory and injunctive relief); *Hood v. Alford*, 3:04-cv-0473-D, 2004 WL 1146582 at *1 (N.D. Tex. May 20, 2004), *R. and R. adopted*, 2004 WL 1393374 (N.D. Tex. June 21, 2004) ("Plaintiff is no longer incarcerated at the Johnson County Jail. His transfer … renders his claims for declaratory and injunctive relief moot as to all Defendants."). The cellmate's transfer ended the potential danger to Eldridge that any injunctive relieve would attempt to prohibit. Further, any suggestion of relief based on the possibility of the cellmate's transfer back to Eldridge's cell is too speculative to warrant relief. *See Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir.1987).

## H.    Leave to Amend.

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal.  *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Leave to amend is not

necessary, however, when the plaintiff already has pleaded his best case. *Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). Eldridge has provided questionnaire responses to expand on the facts giving rise to his Complaint, and has sufficiently explained the bases for his causes of action. The Court believes that leave to amend is unnecessary because Eldridge has pleaded his best case; the circumstances upon which his claims are based simply do not give rise to a constitutional violation that will support a § 1983 claim. For the reasons stated above, Eldridge's claims are fatally flawed and cannot be cured by amendment.  Consequently, granting leave to amend his claims would be futile.

<u>RECOMMENDATION</u>

As shown above, the Magistrate Judge concludes that Eldridge's claims do not survive preliminary screening under 28 U.S.C. §§ 1915 and 1915A. As such, the claims asserted in Eldridge's Complaint should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 3, 2024.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).